UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
CHAUN VALENTINE,

Petitioner,                                                   04 Civ. 1411 (HB)

    -against-                                          **OPINION & ORDER**

STATE OF NEW YORK,

Respondent.
-----------------------------------------------------------X
Hon. HAROLD BAER, Jr., District Judge[*]:

       On February 19, 2004, pro se petitioner Chaun Valentine ("Valentine") filed this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 alleging that at trial: 1) the state violated Batson v. Kentucky, 476 U.S. 79 (1986), by striking the only African-American juror during the first round of jury selection, and 2) the trial court erred by admitting into evidence thirty vials of crack-cocaine not found in the defendant's possession. On September 20, 2004, I referred this matter to Magistrate Judge Gabriel W. Gorenstein. On December 9, 2004, Judge Gorenstein issued a Report and Recommendation ("R&R") that the petition be denied. Valentine filed objections to the R&R on March 15, 2005.[1] For the reasons stated below, the Report and Recommendation is ADOPTED in part and REJECTED in part.

**I. Background**

**A. Factual Background**

**Facts Leading To The Arrest of Petitioner**

       The relevant facts underlying Petitioner's arrest and conviction are recited in the R&R. However, for the sake of clarity, I will recite those facts here as well. On September 7, 1999, a team of officers from the New York Police Department's

---

[*] Priti R. Vakharia, a fall 2005 intern in my chambers, and currently a second year law student at New York Law School, provided substantial assistance in the research and drafting of this Opinion.

[1] By letter dated December 16, 2004, petitioner asked for an extension of time to file objections to the R&R. On December 22, 2004, this Court granted Valentine an extension until January 23, 2005. By letter dated January 12, 2005, petitioner asked for an additional extension. On January 19, 2005, this Court granted Valentine an extension until March 15, 2005.

1

("NYPD's") Street Narcotics Enforcement Unit were stationed in the area of Lenox Avenue and West 129th Street in Manhattan. (Trial Transcript "Tr." 367). Officer Gamble was observing the southeast corner of Lenox Avenue and 129th Street with binoculars from a nearby rooftop while a field team patrolled the area. (Tr. 360-362, 364). Gamble gave descriptions of the persons he observed buying and selling drugs to the field team via radio. (Tr. 360-362, 364).

At about 4:30 p.m. Gamble saw Valentine and James Cabey standing on the southeast corner of Lenox Avenue and West 129th Street. (Tr. 368-370). About eight minutes later, he saw Melvin Hamett approach Valentine and Cabey. (Tr. 370-371). According to Gamble, Valentine and Hamett walked down the block together and had a brief conversation. (Tr. 371). Hamett handed Valentine money and Valentine handed Hamett a small object in return. (Tr. 372, 374). After examining the object, Hamett placed it in his front shirt pocket. (Tr. 375-376). Gamble then radioed members of the field team, describing Hamett's clothing and the direction he was walking. (Tr. 376). Members of the field team stopped Hamett and recovered a vial of crack with a clear top from his shirt pocket. (Tr. 507, 509-510). Hamett was arrested by members of the field team. (Tr. 362-363, 512).

Valentine eventually left Cabey and entered a nearby building, from which he departed two or three minutes later riding a bicycle. (Tr. 381-383). Gamble radioed the field team and relayed Valentine's direction of travel while he continued to watch the southeast corner of Lenox Avenue and West 129th Street. (Tr. 383). About three minutes later, Gamble observed Cabey selling drugs to Clifton Walters, who was also subsequently arrested. (Tr. 383-384). The arresting officers recovered two red-topped vials of crack from Walters. (Tr. 388-389).

Next, Gamble saw Cabey enter a nearby building located at 60 West 129th Street. (Tr. 557). Gamble transmitted descriptions of Cabey and his whereabouts to the field team. (Tr. 557). The officers entered the lobby of the building and found two red-topped vials of crack which Cabey had presumably dropped on the floor of the lobby. (Tr. 557). They also recovered another 26 red-topped vials of crack from the floor of the lobby. (Tr. 593-594, 598).

At approximately 6:00 p.m. that evening, Valentine returned to the vicinity. (Tr. 385-386). At that time, Valentine was arrested. (Tr. 592, 595-596).

**Voir Dire**

At Valentine's trial, 24 potential jurors were empaneled for the first round of jury selection. (Tr. 107-108). The prosecutor exercised a peremptory challenge against Jean Menninger, an African-American female. (Tr. 220-221). Valentine's counsel raised a Batson challenge,[2] stating that Menninger "was the only African-American on the panel that morning." (Tr. 220-221). Valentine's counsel argued that the prosecutor's use of a peremptory challenge to exclude Menninger was questionable since neither defense counsel nor the prosecutor had asked her any questions up to that point. (Tr. 220-222). The prosecutor responded that he had in fact asked Menninger a question. (Tr. 223). He had asked Menninger whether she could take the case "seriously" even if it involved "a small amount of drugs" and she had responded that she could. (Tr. 162-163).

The court required the prosecution to offer a neutral reason for challenging Menninger. (Tr. 225).[3] In response, the prosecutor stated:

> To be precise, it was, at least during my portion of the voir dire as I was going through the questioning, from what I discerned, Ms. Menninger didn't seem to be overly interested in what was going on. It has been my experience that jurors who don't seem that interested in questioning by the lawyers don't make good jurors.

(Tr. 225-226). The judge asked what it was about Menninger that suggested to him that she was not overly interested. (Tr. 226). The prosecutor responded as follows:

> During my questioning, she didn't seem to be paying attention to me. When I scanned the jurors, she wasn't necessarily making eye contact with me. I didn't see—some of the jurors, for example, would follow me around the room. Since I didn't feel she was either taking the voir dire seriously or she was taking my role as a prosecutor in this case seriously, I challenged her.

(Tr. 226).

---

[2] Batson v. Kentucky, 476 U.S. 79 (1986).
[3] In so doing, the court stated "Batson is always difficult because it suggests that one attorney believes the other attorney is a racist, and the judge then has to decide whether the attorney is a racist." (Tr. 224).

3

The trial court accepted the prosecutor's justification for exercising the peremptory challenge as a "fairly neutral reason" and informed Valentine's counsel that she had the burden of showing why the prosecutor's use of the peremptory challenge against Menninger "was in fact a pretext for discrimination" by the prosecutor. (Tr. 226). In response, Valentine's counsel again asserted that the justification was questionable because he had not engaged in a significant colloquy with Menninger. (Tr. 227).

The trial court denied Valentine's Batson challenge. (Tr. 227-228). The court stated that there was no reason to reject the race neutral reason offered by the prosecutor. (Tr. 227-228).

**Admission of Crack Vials**

At trial, the court admitted into evidence, over defense counsel's objection, 30 red-topped vials of crack cocaine recovered from James Cabey and Clifton Walters. (Tr. 408-410, 413, 536-537, 539, 600, 624, 626). The 30 red-topped vials of crack consisted of the two vials recovered from Clifton Walters, the two vials of crack dropped on the floor by Cabey, and 26 vials recovered from the floor of the lobby where the police officers arrested Cabey. (Tr. 387-389, 390-392). In addition to these 30 red-topped vials, the clear-topped vial of crack found in Hamett's possession was also admitted into evidence against Valentine. (Tr. 387, 600).

The state argues here that the red-topped vials of crack were offered into evidence in order to counter Valentine's contention that the police confused Valentine with Cabey. (See Memorandum of Law in Opposition to Petition for a Writ of Habeas Corpus, dated July 19, 2004, at 22). However, the trial transcript does not show that the prosecutor made this argument in support of admitting the vials at the retrial. Misidentification was argued by defense counsel at trial in her opening statement and in the course of her summation. (Tr. 386, 636). In addition, testimony was presented which indicated that a seller will normally sell only one type of crack vial and that two individuals will likely each sell their own type of vial at the same location. (Tr. 582, 587).

During the course of the trial, the judge instructed the jury on a number of occasions as to the limited evidentiary value of the red-topped vials of crack. (Tr. 539, 600, 698-699). The judge told the jury that the only charge against Valentine was that he

4

sold one vial of crack cocaine and that the state does not contend that Valentine possessed or sold any of the other items. (Tr. 539). At the close of the case, the judge reminded the jury that Valentine was charged only with selling the one vial. (Tr. 698-699).

**B. Procedural History**

On January 25, 2001, petitioner was convicted of one count of Criminal Sale of a Controlled Substance in the Third Degree under N.Y. Penal Law § 220.39 and sentenced to 4-3/4 to 9-1/2 years. Petitioner appealed his conviction, raising the same issues in his appellate brief that petitioner presents in the instant petition. The Appellate Division First Department unanimously affirmed Petitioner's conviction. People v. Valentine, 298 A.D.2d 126 (1st Dept. 2002). On January 23, 2003, the New York Court of Appeals denied Petitioner leave to appeal. See People v. Valentine, 99 N.Y.2d 586 (2003). Petitioner subsequently filed this petition for a writ of habeas corpus.

**II. Standard of Review**

In reviewing a magistrate judge's recommendation for the disposition of a petition for habeas corpus, a district court reviews de novo those parts of the report to which the petitioner objects. Fed. R. Civ. P. 72(b); 28 U.S.C. § 636(b)(1)(B). Here, Petitioner has objected to Magistrate Judge Gorenstein's R&R in its entirety.

Federal courts have limited power to review criminal convictions from state courts. See Steele v. Duncan, 03 Civ. 477, 2004 WL 2334074, at *2 (S.D.N.Y. Oct. 14, 2004) (Baer, J.). Section 2254 (d) of Title 28, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), provides:

"An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in the State court proceedings unless the adjudication of the claim – (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court

proceeding." 28 U.S.C § 2254(d); see also Rompilla v. Beard, 125 S. Ct. 2456 (2005); Medellin v. Dretke, 125 S. Ct. 2088, 2099 (2005). A state court determination of a factual issue is presumed correct unless rebutted by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

### III. Discussion
### A. Exhaustion of State Remedies

A state prisoner seeking a writ of habeas corpus must first exhaust all available state remedies with respect to the issues raised in his federal habeas petition, see Cotto v. Herbert, 331 F.3d 217, 237 (2d. Cir. 2003), and petitioner has fulfilled this obligation with respect to his Batson claim. (See R&R at 7-9).

### B. Batson Claim

Petitioner argues that the prosecutor's explanation for striking the first and only African-American juror during the first round of Voir Dire was pretextual since there was no evidence of the juror's alleged disinterest. Petitioner argues that the purposefully discriminatory challenge of this juror denied him equal protection of the law under the Fourteenth Amendment. Valentine raised his Batson claim in his direct appeal. Valentine is only entitled to relief if, in denying his claim, "the Appellate Division applied a rule that contradicted or unreasonably applied governing law." (R&R at 11).

Batson v. Kentucky, 476 U.S. 79 (1986), provides the standard by which trial courts determine whether a party violated the Fourteenth Amendment through the use of a peremptory challenge. First, "a trial court must decide whether the party challenging the strike has made a prima facie showing that the circumstances give rise to an inference that a member of the venire was struck because of his or her race." Galarza v. Keane, 252 F.3d 630, 636 (2d Cir. 2001). Second, "[i]f the party making the Batson challenge establishes a prima facie case, the trial court must require the non-moving party to proffer a race-neutral explanation for striking the potential juror. . . . Finally, if the non-moving party proffers a race-neutral explanation, the trial court must determine whether the moving party has carried his or her burden of proving that the strike was motivated by purposeful discrimination." Id.

6

In reviewing a trial court's determination of a Batson challenge in the context of a habeas petition, "great deference" should be accorded" "to the trial court's findings." McKinney v. Artuz, 326 F.3d 87, 100 (2d Cir. 2003) (internal quotation omitted). "[T]he evaluation of [a] striking attorney's state of mind based on demeanor and credibility lies peculiarly within a trial judge's province." Id. at 100-101 (internal quotations omitted).

Here, the record does not support the trial court's determination that Ms. Menninger was struck for reasons apart from her race. Ms. Menninger was the only African-American on the panel, and thus was also the first and only African-American struck by the prosecutor. (Tr. 221). Nonetheless, the trial court proceeded to request a race neutral reason for the peremptory strike. "Where an explanation is given for the contested challenge[] and the trial judge rules 'on the ultimate issue of intentional discrimination, the preliminary issue of whether the defendant had made a prima facie showing becomes moot.'" United States v. Franklyn, 157 F.3d 90, 97 (2d Cir. 1998) (quoting Hernandez v. New York, 500 U.S. 352, 359 (1991)).

The prosecutor proffered reasons for his use of a peremptory challenge were that Menninger was not overly interested in what was going on, was not paying attention during questioning, and that she was not taking the voir dire seriously. (Tr. 225-226). However, the prosecutor provided no basis for these assertions, apart from his statement that Ms. Menninger had not made eye contact with him. (Tr. 226). Defense counsel then pointed out that the prosecutor had only asked Menninger one brief question, which he posed to a string of jurors, presumably sitting in a row or two rows in the jury box, regarding the small amount of drugs involved in the case. (Tr. 227). Based on this record, the trial court denied the defendant's Batson challenge. (Tr. 227-28.)

This Circuit has made clear that demeanor evidence, which is all I see here, must be carefully evaluated:

> An impression of the conduct and demeanor of a prospective juror during the *vior dire* may provide a legitimate basis for the exercise of a peremptory challenge. The fact that a prosecutor's explanations in the face of a Batson inquiry are founded on these impressions does not make them unacceptable if they are sufficiently specific to provide a basis upon which to evaluate their legitimacy. Yet, because such after-the-fact rationalizations are susceptible to abuse, a prosecutor's reason for discharge bottomed on demeanor evidence deserves particularly careful scrutiny.

Brown v. Kelly, 973 F.2d 116, 121 (2d Cir. 1992). Inattentiveness can be a valid race-neutral reason for a peremptory strike. See United States v. Rudas, 905 F.2d 38 (2d Cir. 1990). However, courts that have accepted juror inattentiveness as a race-neutral justification have done so on the basis of specific evidence in the record supporting the prosecutor's explanation. See, e.g., Stays v. Herbert, 01 Civ. 2400, 2003 WL 22765352, * 4 (E.D.N.Y. Nov. 24, 2003) (crediting prosecutor's race-neutral explanation that juror was inattentive because she yawned several times, had her eyes closed and did not answer a question posed by the court). Nothing like that happened here. To allow otherwise would enable a prosecutor to defeat any Batson challenge because I am bound to rely on his or her subjective impression of a juror's demeanor without articulating specific reasons for the challenge. The record before me provides no support for the prosecutor's allegation of inattentiveness, apart from his assertion that Ms. Menninger did not sustain eye contact. This is not a sufficient race-neutral justification, and the trial court's contrary conclusion was an unreasonable application of controlling law. See 28 U.S.C. § 2254(d).

    Before requiring the prosecutor to offer a race-neutral justification for his challenge of Ms. Menninger, the trial court remarked that "Batson is always difficult because it suggests that one attorney believes the other attorney is a racist, and the judge then has to decide whether the attorney is a racist." (Tr. 224). The Batson test is quite different, it requires trial courts to determine whether a juror has been struck because of his or her race, and has nothing whatsoever to do with whether a prosecutor harbors racist tendencies. The trial court's statement, even if an offhand observation, implies a reluctance to question the prosecutor's motivation and concomitantly his intent. Where a state court has not adequately adjudicated a prisoner's Batson challenge, "the responsibility for assessing the prosecutor's credibility and determining his intent falls on the district judge." Jordan v. Lefevre, 293 F.3d 587, 593 (2d Cir. 2002). To aid in this determination among others, a district court may hold a "reconstruction hearing" to take testimony regarding the prosecutor's intent. Id. See also DeBerry v. Portuondo, 98 Civ. 3323, 2002 WL 31946703, * 2 (E.D.N.Y. Oct. 21, 2002) (identifying reconstruction hearing as possible remedy for Batson violation). Thus, this Court will hold a

reconstruction hearing at which the respondent may call, and make available for cross examination, the prosecutor as well as any other witnesses that may shed light on the circumstances surrounding the peremptory challenge. Petitioner may also call witnesses, including his trial counsel, to support his view that the prosecutor's proffered explanation was pretextual. This testimony will serve to expand the record regarding Ms. Menninger's demeanor during voir dire.

**C. Admission of Evidence**

"Erroneous evidentiary rulings do not automatically rise to the level of constitutional error sufficient to warrant issuance of a writ of habeas corpus." Taylor v. Curry, 708 F.2d 886, 891 (2d Cir.1983). "[T]he erroneous admission of evidence rises to a deprivation of due process under the Fourteenth Amendment only if 'the erroneously admitted evidence, viewed objectively in light of the entire record before the jury, was sufficiently material to provide the basis for conviction or to remove a reasonable doubt that would exist on the record without it.'" (R&R at 16, quoting Collins v. Scully, 755 F.2d 16, 19 (2d Cir. 1985)). Petitioner argues that he was denied his fundamental right to a fair trial when the trial court admitted into evidence the crack cocaine found in Cabey's possession because such evidence was irrelevant and highly prejudicial. This evidence was relevant, however, to rebut the Valentine's misidentification defense. In addition, the trial court admitted the vials subject to a limiting instruction. (Tr. 539, 600, 698-699). In addition, "[e]ven if it could be shown that the red-topped vials were erroneously admitted, the evidence was not 'sufficiently material' to cause a constitutional violation." (R&R at 17, quoting Collins, 755 F.2d at 19). The officers testified at trial, without objection, to the recovery of the red-topped vials. (See Tr. 387-89, 390-92). Therefore, the admission of the vials themselves did not deprive petitioner of a fundamentally fair trial.[4]

---

[4] This Court need not reach the issue of exhaustion because Valentine's claim lacks merit. 28 U.S.C. § 2254(b)(2).

## IV. Conclusion

Having reviewed de novo the Report and Recommendation of Magistrate Judge Gorenstein, this Court ADOPTS the R&R insofar as it recommends denial of petitioner's evidentiary claim but REJECTS the R&R insofar as it recommends denial of petitioner's Batson claim. A reconstruction hearing, of which the Assistant Attorney General will ensure that petitioner receives notice, will be held in my courtroom on February 6, 2006 at 10:00 a.m.

**IT IS SO ORDERED.**

December ~~November~~ __, 2005
New York, New York

U.S.D.J.