UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
CHAUN VALENTINE,                                :
                                                :
Petitioner,                                     :        04 Civ. 1411 (HB)
                                                :
    -against-                                :        **OPINION & ORDER**
                                                :
STATE OF NEW YORK,                              :
                                                :
Respondent.                                     :
------------------------------------------------------------X

**Hon. HAROLD BAER, Jr., District Judge:**\*

        On February 19, 2004, Chaun Valentine filed this petition for a writ of habeas corpus pursuant to 28 U.S.C. §2254. Valentine's petition alleged two grounds for habeas relief: 1) that the trial court violated his due process rights by admitting "irrelevant and highly prejudicial" evidence; and 2) that the prosecutor struck a potential juror on the basis of race in violation of Batson v. Kentucky, 476 U.S. 79 (1986). On September 20, 2004, I referred the matter to Magistrate Judge Gabriel W. Gorenstein. On December 8, 2004, Judge Gorenstein issued a Report and Recommendation ("R&R") that the petition be denied in all respects.[1] See Valentine v. New York, 04 Civ. 1411, 2004 WL 2823192 (S.D.N.Y. December 8, 2004) ("Valentine I"). On December 1, 2005 I adopted Judge Gorenstein's R&R insofar as it recommended a denial of petitioner's evidentiary claim but rejected the R&R insofar as it recommended a denial of petitioner's Batson claim. See Valentine v. State of New York, 04 Civ. 1411, 2005 WL 3215224 (S.D.N.Y. December 1, 2005) ("Valentine II"). I also ordered a reconstruction hearing to expand the voir dire record. Id. at *7. That hearing occurred on May 5, 2006. For the reasons set forth below, Valentine's Batson claim is denied.

---

\* William Pollak, a first year law student at the University of Michigan Law School and an intern in my Chambers during the summer of 2006, provided substantial assistance in the research and drafting of this Opinion.
[1] Petitioner was given several extensions to file his objections to the R&R. Petitioner ultimately filed his objections on March 28, 2005.

## I. FACTUAL BACKGROUND

The facts underlying Valentine's conviction for Criminal Sale of a Controlled Substance in the Third Degree, in violation of N.Y. Penal Law § 220.39, are set forth in my Opinion adopting in part Magistrate Judge Gorenstein's R&R. See Valentine II, 2005 WL 3215224, at *1-2. Only those facts relevant to petitioner's Batson claim will be repeated herein.

### A. The Voir Dire Record

At Valentine's trial, 24 potential jurors were empanelled for the first round of jury selection. (Voir Dire Transcript, dated October 24, 2000 ("Trial Tr.") at 107-108). The prosecutor exercised a peremptory challenge against Jean Menninger, an African American female. (Trial Tr. at 220-221). Valentine's counsel raised a Batson challenge, stating that Menninger "was the only African-American on the panel that morning." (Trial Tr. at 220-221).[2] Valentine's counsel argued that the prosecutor's use of a peremptory challenge to exclude Menninger was questionable since neither defense counsel nor the prosecutor had asked her any questions up to that point. (Trial Tr. at 220-222). The prosecutor responded that he had in fact asked Menninger a question. (Trial Tr. at 223). Indeed, he had asked Menninger whether she could take the case "seriously" even if it involved "a small amount of drugs" and she had responded that she could. (Trial Tr. 162-163). The trial judge pointed out that "[t]here is no obligation that an attorney, acting correctly, has to ask questions of every juror he challenges peremptorily." (Trial Tr. at 221). The court expressed skepticism regarding whether defense counsel had demonstrated a pattern of discriminatory strikes but nonetheless decided to give petitioner "the benefit of the doubt, irrespective of whether that standard has been met" and required the prosecutor to offer a neutral reason for challenging Menninger. (Trial Tr. at 221-23, 225).[3] In response, the prosecutor stated:

---

[2] Initially, defense counsel raised a Batson challenge against the prosecutor's use of peremptory challenges against three "people of color" on the jury. (Trial Tr. 220-21). The trial judge then stated that "[p]eople of color are not a recognizable group under Batson. Pick a recognizable group." (Trial Tr. 220-21). Defense counsel subsequently narrowed her Batson challenge to the striking of Ms. Meninger, "the only African-American" juror on the panel. (Id. at 222.)

[3] In so doing, the trial judge stated that "Batson is always difficult because it suggests that one attorney believes the other attorney is a racist, and the judge then has to decide whether the attorney is a racist." (Trial Tr. at 224).

2

> To be precise, it was, at least during my portion of the voir dire as I was going through the questioning, from what I discerned, Ms. Menninger didn't seem to be overly interested in what was going on. It has been my experience that jurors who don't seem that interested in questioning by the lawyers don't make good jurors.

(Trial Tr. at 225-226). The judge then asked what it was about Menninger that suggested to the prosecutor that she was not overly interested. (Trial Tr. at 226). The prosecutor responded as follows:

> During my questioning, she didn't seem to be paying attention to me. When I scanned the jurors, she wasn't necessarily making eye contact with me. I didn't see—some of the jurors, for example, would follow me around the room. Since I didn't feel she was either taking the voir dire seriously or she was taking my role as a prosecutor in this case seriously, I challenged her.

(Trial Tr. at 226).

The trial judge then stated that the prosecutor's proffered justification was a "fairly neutral reason" and informed Valentine's counsel that she had the burden of showing why the prosecutor's use of the peremptory challenge against Menninger "was in fact a pretext for discrimination." (Trial Tr. at 226). In response, Valentine's counsel again asserted that the prosecutor's explanation was questionable since the prosecutor had not engaged in a significant colloquy with Menninger. (Trial Tr. at 227). The trial court proceeded to deny Valentine's Batson challenge, stating that there was no reason to reject the race neutral reason offered by the prosecutor. (Trial Tr. 227-228).

**B. Reconstruction Hearing**

The sole witness at the reconstruction hearing was Tommie Lee Summerville, the former New York County Assistant District Attorney who prosecuted Valentine. Neither of Valentine's two trial attorneys testified. Valentine's habeas counsel[4] stated that she had been unable to contact Valentine's lead trial attorney and that Valentine's other attorney (who second chaired the trial) lacked any recollection of the voir dire.

---

[4] Valentine initially filed this petition *pro* se. However, I appointed counsel to represent Valentine at the reconstruction hearing in accordance with the Criminal Justice Act, 18 U.S.C. § 3006A. Valentine, who had been released from state custody at the time of the reconstruction hearing, also attended.

(Reconstruction Hearing Transcript, dated May 5, 2006 ("Reconstruction Tr.") at 3). In preparing for the hearing, the Attorney General's office contacted Justice Marcy Kahn, who presided at petitioner's trial. However, Justice Kahn wrote to the Attorney General's office that she has "no present recollection of the voir dire in [Valentine's] case beyond a vague recollection of the exchange . . . reflected in my notes." (Resp.'s Exs. 2-3;[5] Reconstruction Tr. at 5).

Justice Kahn's notes were also admitted into evidence at the reconstruction hearing. (Resp.'s Ex. 1) Justice Kahn's voir dire notes are not entirely clear. However, it appears that Justice Kahn documented the prosecutor's proffered explanation for striking Menninger, rather than recording her own observations of Menninger's demeanor. Under the heading "Batson" and the subheading "$\pi$", presumably referring to the prosecution, Judge Kahn lists, *inter alia*, the following under "neutral reason[s]": "not overly interested in questioning by lawyers . . . she ≠ paying attention . . . no eye contact . . ." (Pl.'s Ex. 1; Reconstruction Tr. at 5, 7). These notes appear to follow the Batson colloquy, wherein Summerville stated that he struck Menninger because "she didn't seem to be overly interested[,]….[or] paying attention to me….she wasn't necessarily making eye contact with me." (Trial Tr. at 223-227).

At the reconstruction hearing, Summerville reiterated that he had challenged Menninger because "she did not appear to me to be terribly interested in what was going on in the courtroom that day. During voir dire, she looked bored. Her body language suggested to me that she didn't care to be there." (Reconstruction Tr. at 20). Summerville testified that his general practice was to survey the jury panel and challenge those jurors that were either overly eager to serve or who appeared to be uninterested in the proceedings. (Id. at 21). He explained that "jurors who don't seem interested won't think for themselves in the jury room and will simply kind of go along with whatever the prevailing thought in the jury room is." (Id. at 22). However, Summerville admitted that he had not observed Menninger chatting with other jurors or reading during jury selection. (Id. at 21-22). Rather, Summerville had observed Menninger "looking places other than what was going on in the well of the courtroom." (Id.). Finally, Summerville

---

[5] The two letters from Justice Kahn and her trial notes were incorrectly labeled Plaintiff's Exhibits 1, 2 and 3, although they were actually offered into evidence by the respondent. (Reconstruction Tr. 5). Therefore, they will be referred to as Respondent's Exhibits 1, 2 and 3.

4

vigorously denied that he had challenged Menninger because of her race, and asserted that he was "99 percent certain that there were other" white jurors on the panel that he had challenged because of their inattentiveness. (Id. at 25-26).

Summerville, who is himself African-American, (id. at 46), also testified that he wished more African-Americans participated in the jury process. (Id. at 18). He stated that he felt "uncomfortable" trying a black defendant in front of an all white jury. (Id.) When asked whether he was disappointed that he felt compelled to strike Menninger, he replied, "[it] didn't come easy to me." (Id. at 25).

During cross-examination, Valentine's counsel attempted to elicit where in the courtroom Menninger had been seated during voir dire. (Id. at 36). According to Summerville's notes from the jury selection (hereinafter referred to as the "voir dire grid"), the first 16 prospective jurors (numbered 1 through 16) were seated in the "jury box"; the second 8 prospective jurors (numbered 17 through 24) were seated in the "front row"; and the final 8 jurors (also mistakenly numbered 17 through 24) were seated in the "audience." (Id. at 34-36; Pet.'s Ex. 1).[6] Menninger, juror number 24, was clearly listed in the "front row." (Reconstruction Tr. at 36; Pet.'s Ex. 1). At the hearing, Summerville could not recall whether the "front row" in his notes referred to the front row of the jury box (which would mean that the jury box held 24 potential jurors) or the front row of the audience. (Reconstruction Tr. at 35-36, 38). Summerville acknowledged that, if Menninger had been seated in the audience, he would have been seated with his back to her. (Id. at 39). However, Summerville stated that if "there were eight jurors behind counsel table….[u]nder no circumstances would I have sat . . . with my back to them the entire time…it sends a terrible message to jurors.…" (Id.)

Summerville also admitted that he made no notes regarding Menninger's demeanor. (Id. at 40). Rather, in reference to Menninger, Summerville's notes state, *inter alia*: "Ret. From Bell Atl[antic]. . . 2x juror in crim[inal case]. . . home burg[larized] 10 yrs ago . . . cousin = lawyer[.]" (Pet.'s Ex. 1). Summerville had taken notes regarding other juror's negative qualities. (Id.; Reconstruction Tr. at 40). For example, Summerville peremptorily challenged juror 18, Diosada Martinez, and noted on

---

[6] The "voir dire grid" is mistakenly labeled as Defendant's Exhibit 1, although it was actually offered into evidence by the petitioner. (Reconstruction Tr. at 32). Therefore, it will be referred to as Petitioner's Exhibit 1.

5

his voir dire grid that the "cops roughed up [her] son" who had been arrested twice. (Trial Tr. 212-214, 219; Petitioner's Ex. 1).

## II. DISCUSSION

### A. Applicable Standards

In Batson v. Kentucky, 476 U.S. 79 (1986), the Supreme Court set forth a three-part test to determine whether the use of a peremptory challenge constitutes a violation of the Fourteenth Amendment. First, "a trial court must decide whether the party challenging the strike has made a *prima facie* showing that the circumstances give rise to an inference that a member of the venire was struck because of his or her race." Galarza v. Keane, 252 F.3d 630, 636 (2d Cir. 2001). Second, "[i]f the party making the Batson challenge establishes a *prima facie* case, the trial court must require the non-moving party to proffer a race-neutral explanation for striking the potential juror. . . . Finally, if the non-moving party proffers a race-neutral explanation, the trial court must determine whether the moving party has carried his or her burden of proving that the strike was motivated by purposeful discrimination." Id. "Where[,] [as here] an explanation is given for the contested challenge[] and the trial judge rules 'on the ultimate issue of intentional discrimination, the preliminary issue of whether the defendant had made a *prima facie* showing becomes moot.'" United States v. Franklyn, 157 F.3d 90, 97 (2d Cir. 1998) (quoting Hernandez v. New York, 500 U.S. 352, 359 (1991)). Thus, in reviewing the trial court's denial of Valentine's Batson challenge, I am only concerned with whether the prosecutor's proffered race-neutral explanation was in fact pretextual.

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214, codified at 28 U.S.C. §§ 2254-55, narrowed the scope of federal habeas review of state convictions. Prior to the enactment of AEDPA, a district court faced with a Batson claim from a state prisoner afforded "great deference" to the state court's assessment of the prosecutor's proffered race-neutral explanation. See Hernandez, 500 U.S. 352 (1991); Messiah v. Duncan, 435 F.3d 186, 196 (2d Cir. 2006) (discussing pre-AEDPA standard of review); Deberry v. Portuondo, 403 F.3d 57 (2d Cir. 2005) (same). AEDPA "places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus" by requiring even more

deferential review of the trial court's factual findings and legal conclusions. Williams v. Taylor, 529 U.S. 362, 412 (2000). See also Messiah v. Duncan, 435 F.3d 186, 197 (2d Cir. 2002); Jenkins v. Artuz, 294 F.3d 284, 286 (2d Cir. 2002). Specifically, section 2254(d) of Title 28, as amended by AEDPA, provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in the State court proceedings unless the adjudication of the claim – (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C § 2254(d). See also Rompilla v. Beard, 545 U.S. 374 (2005) (to receive habeas relief under 28 U.S.C. § 2254, petitioner must show that state court's decision was "not only incorrect or erroneous [but] objectively unreasonable") (internal quotation omitted). In addition, a state court's factual determination is presumed correct unless rebutted by clear and convincing evidence. See 28 U.S.C. § 2254(e)(1). A state court's acceptance of a prosecutor's proffered justification for a peremptory challenge "is a factual determination and thus qualifies for the presumption of correctness [under 28 U.S.C. § 2254(e)(1)]." Bryant v. Speckard, 131 F.3d 1076, 1077 (2d Cir. 1997). Consequently, Valentine has the burden of showing, by clear and convincing evidence, that the state court's denial of his Batson challenge constituted an unreasonable factual determination. See 28 U.S.C. §§ 2254(d), (e)(1).

**B. Analysis**

Valentine argues, *inter alia*, that the prosecutor's explanation for striking Ms. Menninger was not credible because there is no objective evidence of Menninger's alleged disinterest. Prior to the enactment of AEDPA, the Second Circuit had held that demeanor evidence must be carefully evaluated because of its susceptibility to conscious or unconscious prejudices:

7

> An impression of the conduct and demeanor of a prospective juror
> during the *voir dire* may provide a legitimate basis for the exercise
> of a peremptory challenge. The fact that a prosecutor's
> explanations in the face of a Batson inquiry are founded on these
> impressions does not make them unacceptable if they are
> sufficiently specific to provide a basis upon which to evaluate their
> legitimacy. Yet, because such after-the-fact rationalizations are
> susceptible to abuse, a prosecutor's reason for discharge bottomed
> on demeanor evidence deserves particularly careful scrutiny.

Brown v. Kelly, 973 F.2d 116, 121 (2d Cir. 1992). However, this cautionary language must be viewed through the prism of AEDPA which, as set forth above, narrowed the scope of federal habeas review.

Even prior to the passage of AEDPA, inattentiveness could constitute a valid race-neutral reason for a peremptory strike. See, e.g., United States v. Rudas, 905 F.2d 38 (2d Cir. 1990) (accepting prosecutor's race-neutral explanation that he had observed a juror napping during the voir dire). However, courts that have accepted juror inattentiveness as a valid justification have generally done so on the basis of specific evidence in the record supporting the prosecutor's race-neutral explanation. See, e.g., Stays v. Herbert, 01 Civ. 2400, 2003 WL 22765352, * 4 (E.D.N.Y. Nov. 24, 2003) (crediting prosecutor's race-neutral explanation that juror was inattentive because she yawned several times, had her eyes closed and did not answer a question posed by the court). Nonetheless, in reviewing a state court's rejection of a Batson challenge based on demeanor evidence, a federal district court must remain mindful of the post AEDPA strictures of federal habeas review. See Rice v. Collins, 126 S. Ct. 969, 976 (2006) (even if "[r]easonable minds reviewing the record might disagree about the prosecutor's credibility [with regard to observation of a prospective juror's demeanor] . . . on habeas review that does not suffice to supersede the trial court's credibility determination").

Here, the record (both at trial and from the reconstruction hearing) is devoid of any specific basis for the prosecutor's assertion that Menninger appeared inattentive, apart from Summerville's statement that Menninger "wasn't necessarily making eye contact with me." (Trial Tr. at 226). Pre-AEDPA, I would likely have determined that this record was insufficient to sustain the trial court's denial of Valentine's Batson challenge. See Brown, 973 F.2d at 121 (2d Cir. 1992); cf. People v. Ying, 236 A.D.2d

630 (N.Y. App. Div. 2nd Dep't 1997) (holding on direct appeal that prosecutor's explanation that she challenged juror because juror failed to make eye contact during questioning was pretextual). However, AEDPA mandates an enhanced level of deference to a state trial court's assessment of the credibility of a prosecutor's proffered justification. The writ can only be granted if petitioner proves, by clear and convincing evidence, a higher standard than any plaintiff in a civil matter is required to meet, that the trial court's decision "was based on an unreasonable determination of the facts…." See 28 U.S.C. §§ 2254(d), (e)(1). Here, Summerville's assertion that Menninger appeared bored and inattentive is not contradicted by any evidence in the record. Petitioner proffered no testimony at the reconstruction hearing that clearly contradicts Summerville's assertion. Rather, petitioner argues that Summerville may have been facing away from Menninger during the voir dire and that Summerville failed to record his observations of her in his notes. While these arguments cast some doubt on Summerville's proffered justification, they do not clearly discredit it. Thus, petitioner has not demonstrated that the trial court was unreasonable in accepting Summerville's explanation.

Finally, I must note that the sparse record in this case demonstrates the inherent problem in accepting justifications grounded in juror demeanor as sufficient to support the use of a peremptory. "[J]udging attentiveness requires observations of demeanor that will often not be reflected [in] the written record. This difficulty is compounded by the need to compare the attentiveness of the challenged venire members with those who were not challenged." United States v. Sherrills, 929 F.2d 393, 394 (8th Cir. 1991). AEDPA has rendered it extremely difficult for a petitioner to satisfy his burden of demonstrating that a trial court's acceptance of a prosecutor's assertion of juror inattentiveness was "unreasonable." Cf. Rice, 126 S. Ct. at 977 (Brennan, J. concurring) ("Appellate judges cannot on the basis of a cold record easily second-guess a trial judge's decision [regarding a prosecutor's] motivation.") Indeed, as this case demonstrates, Congress has made it virtually impossible to review such a determination. Therefore, unless Congress is moved to act again, federal district courts will remain severely hampered in reviewing Batson claims based on non-specific demeanor justifications. Nonetheless, here petitioner has failed to demonstrate that the trial court's acceptance of the prosecutor's

proffered explanation was unreasonable or contrary to law. Therefore, Valentine's petition must be denied.

## III. CONCLUSION

For the reasons set forth above, Valentine's petition for a writ of habeas corpus is DENIED. I hereby certify this matter for appeal pursuant to 28 U.S.C. § 2253(c). The Clerk of the Court is directed to close this matter and to remove it from my docket.

SO ORDERED.
\_\_\_\_, 2006
New York, New York

*/s/ Harold Baer*
U.S.D.J.